# IN RE SUNDERLAND.

---

PATENTS; ANTICIPATION; PATENTABILITY.

A device relating to couplings for stay wires and the like, with particular reference to stays used in connection with aerial wireless towers which are generally insulated from the earth, one object of the invention being to produce a stay connection having flexibility with little stretch, *held* to be anticipated as merely covering a combination of two such loops as were shown by any one of three references cited, with an insulator shown by any one of three other references, used between the loops, and because any good mechanic by referring to the patents cited could have produced the same result as the applicant.

No. 1119. Patent Appeals. Submitted November 14, 1917. Decided January 7, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents denying an application for a patent.      *Affirmed.*

The facts are stated in the opinion.

*Mr. Cleon J. Sawyer* for the appellant.

*Mr. Theodore A. Hostetler* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decision of the Patent Office denying the following claims:

"1. An article of manufacture consisting of a flexible rope socket comprising a solid metal base and a flexible wire-rope loop, the ends of the loop being permanently secured to the base.

"2. A flexible coupling for wire rope consisting of a pair of linked sockets formed of flexible wire-rope loops and socket bases of solid metal, each of the loops having its ends permanently attached to its individual socket base.

"3. In combination, wire ropes and a flexible insulating coupling comprising a pair of linked sockets formed of flexible wire-rope loops and socket bases of solid metal to which bases the ropes are secured, each of the loops having its ends permanently attached to its individual socket base, and an insulator inserted between the flexible loops to form a mechanical connection between the sockets and to insulate them from one another.

"4. In combination, wire ropes and a flexible coupling comprising a pair of linked sockets formed of flexible wire-rope loops and socket bases of solid metal to which bases the ropes are secured, each of the loops having its ends permanently attached to its individual socket base, and a block having grooves at right angles for receiving the loops and inserted between the flexible loops to form a mechanical connection between the sockets."

The invention, according to appellant's specification, "relates generally to couplings for stay wires and the like, with particular reference to stays used in connection with aerial wireless towers which are generally insulated from the earth." The specification further sets forth that one object of the inven-

tion is to produce a stay connection having flexibility with little stretch. The Examiner was of opinion that claim 1 is met by the patents to Gillette, Hill, or Jobson, and that claims 2, 3, and 4 are "squarely met by any one of the above references taken with Brown, Fletcher, or Seymour." The Examiner further said: "These claims cover merely a combination of two such loops as are shown by any one of the first three references, with an insulator such as shown by any one of Brown, Fletcher, or Seymour used between the loops." The Examiners in Chief sustained the view of the Examiner and pointed out that, the first claim being addressed to a single socket member reads as well upon the Hill constructon as upon that of the applicant. The decision of the Examiners in Chief was affirmed by the Assistant Commissioner.

Appellant's device may be described as two interlocking wire-rope loops separated by an insulator, such as porcelain, the ends of the ropes being permanently attached and the entire device being merely an insulated link in a stay. In other words, this insulated link in the stay, for purposes of illustration, may be likened to a swivel in a chain.

The patent to Hill (No. 929,132, dated July 27, 1909) covers an insulator designed primarily for suspending trolley wires, electric cables, or other conductors from the under side of structures of any sort. The most approved type described by Hill differs from appellant's device in that it lacks flexibility. In Hill's figure 4, however, the loops or short pieces of cable are passed through the insulating body in practically the same way that appellant's loops are passed through it, and the ends of the loops are permanently attached like those of appellant. It is apparent, however, that Hill was not seeking flexibility, and his loops are too short, even in figure 4, to admit of it. But, as pointed out by the Patent Office, anyone familiar with the art who was seeking a flexible insulator of the Hill type would have had no difficulty in constructing such a device by combining the Hill and the Fletcher or Jobson devices. The Fletcher patent (No. 1,028,104, and dated June 4, 1912) relates to a strain insulator in a stay or guy wire, as does appellant's device, the only difference between the two devices being

the manner in which the ends of the Fletcher loops are attached and the shape of those loops. That there is flexibility in the Fletcher device is certain, for the width of the groove in the insulated material is "of sufficient size to easily accommodate the wire" (of the loop). In other words, whether Fletcher appreciated the importance of this or not, his drawings and specification clearly disclose it. The Jobson patent (British, No. 15,523, of November 25, 1884) disclosed means similar to that employed by appellant for attaching the ends of the loop.

We conclude, therefore, as did the Patent Office, that appellant's efforts did not rise to the dignity of invention. Any good mechanic, by referring to the patents cited, could have produced the same result.

The decision is affirmed.                              *Affirmed.*